UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA



FILED
SEP 24 2010
Clerk, U.S District
Courts for the District

UNITED STATES OF AMERICA,
U.S. Department of Justice
Antitrust Division
450 Fifth Street, N.W., Suite 7100
Washington, DC 20530,

               *Plaintiff,*

               v.

ADOBE SYSTEMS, INC.
345 Park Avenue
San Jose, CA 95110;

APPLE INC.
1 Infinite Loop
Cupertino, CA 95014;

GOOGLE INC.
1600 Amphitheater Parkway
Mountain View, CA 94043;

INTEL CORPORATION
2200 Mission College Boulevard
Santa Clara, CA 95054;

INTUIT, INC.
2632 Marine Way
Mountain View, CA 94043; and

PIXAR
1200 Park Avenue
Emeryville, CA 94608,

             *Defendants.*

Case: 1:10-cv-01629
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 9/24/2010
Description: Antitrust

## COMPLAINT

The United States of America, acting under the direction of the Attorney General of the United States, brings this civil antitrust action to obtain equitable relief against Defendants Adobe Systems, Inc. ("Adobe"), Apple Inc. ("Apple"), Google Inc. ("Google"), Intel Corporation ("Intel"), Intuit, Inc. ("Intuit"), and Pixar, alleging as follows:

## NATURE OF THE ACTION

1. This action challenges under Section 1 of the Sherman Act five bilateral no cold call agreements among Adobe, Apple, Google, Intel, Intuit, and Pixar.

2. Defendants compete for highly skilled technical employees ("high tech employees") and solicit employees at other high tech companies to fill employment openings. Defendants' concerted behavior both reduced their ability to compete for employees and disrupted the normal price-setting mechanisms that apply in the labor setting. These no cold call agreements are facially anticompetitive because they eliminated a significant form of competition to attract high tech employees, and, overall, substantially diminished competition to the detriment of the affected employees who were likely deprived of competitively important information and access to better job opportunities.

3. Defendants' agreements are restraints of trade that are per se unlawful under Section 1 of the Sherman Act, 15 U.S.C. § 1. The United States seeks an order prohibiting such agreements.

## JURISDICTION AND VENUE

4. Each Defendant hires specialized computer engineers and scientists throughout the United States, and each sells high technology products throughout the United States. Such activities, including the recruitment and hiring activities at issue in this Complaint, are in the
2

flow of and substantially affect interstate commerce. The Court has subject matter jurisdiction under Section 4 of the Sherman Act, 15 U.S.C. § 4, and under 28 U.S.C. §§ 1331 and 1337 to prevent and restrain the Defendants from violating Section 1 of the Sherman Act, 15 U.S.C. § 1.

5. Venue is proper in this judicial district under Section 12 of the Clayton Act, 15 U.S.C. § 22, and under 28 U.S.C. § 1391(b)(2), (c). Defendants transact or have transacted substantial business here.

## DEFENDANTS

6. Defendant Adobe is a Delaware corporation with its principal place of business in San Jose, California.

7. Defendant Apple is a California corporation with its principal place of business in Cupertino, California.

8. Defendant Google is a Delaware corporation with its principal place of business in Mountain View, California.

9. Defendant Intel is a Delaware corporation with its principal place of business in Santa Clara, California.

10. Defendant Intuit is a Delaware corporation with its principal place of business in Mountain View, California.

11. Defendant Pixar is a California corporation with its principal place of business in Emeryville, California.

## TRADE AND COMMERCE

12. High tech labor is characterized by expertise and specialization. Defendants compete for high tech employees, and in particular specialized computer science and engineering

talent on the basis of salaries, benefits, and career opportunities. In recent years, talented computer engineers and computer scientists have been in high demand.

13.     Although Defendants employ a variety of recruiting techniques, cold calling another firm's employees is a particularly effective method of competing for computer engineers and computer scientists. Cold calling involves communicating directly in any manner (including orally, in writing, telephonically, or electronically) with another firm's employee who has not otherwise applied for a job opening. Defendants frequently recruit employees by cold calling because other firms' employees have the specialized skills necessary for the vacant position and may be unresponsive to other methods of recruiting. For example, several Defendants at times have received an extraordinary number of job applications per year. Yet these companies still cold called engineers and scientists at other high tech companies to fill certain positions.

14.     In a well-functioning labor market, employers compete to attract the most valuable talent for their needs. Defendants' concerted behavior both reduced their ability to compete for employees and disrupted the normal price-setting mechanisms that apply in the labor setting. These no cold call agreements are facially anticompetitive because they eliminated a significant form of competition to attract high tech employees, and, overall, substantially diminished competition to the detriment of the affected employees who were likely deprived of competitively important information and access to better job opportunities.

### The Unlawful Agreements

15.     The six Defendants entered into five substantially similar agreements not to cold call employees. The agreements were between (i) Apple and Google, (ii) Apple and Adobe, (iii) Apple and Pixar, (iv) Google and Intel, and (v) Google and Intuit. As detailed below, these

agreements were created and enforced by senior executives of these companies.

16. These no cold call agreements were not ancillary to any legitimate collaboration between Defendants. None of the agreements was limited by geography, job function, product group, or time period. Thus, they were much broader than reasonably necessary for the formation or implementation of any collaborative effort. The lack of necessity for these broad agreements is further demonstrated by the fact that Defendants engaged in substantial collaborations that either did not include no cold call agreements or contained narrowly tailored hiring restrictions.

## Apple-Google Agreement

17. Beginning no later than 2006, Apple and Google agreed not to cold call each other's employees. Senior executives at Apple and Google reached an express no cold call agreement through direct and explicit communications. The executives actively managed and enforced the agreement through direct communications.

18. The Apple-Google agreement covered all Google and all Apple employees and was not limited by geography, job function, product group, or time period. Moreover, employees were not informed of and did not agree to this restriction.

19. In furtherance of this agreement, Apple placed Google on its internal "Do Not Call List," which instructed Apple employees not to cold call employees from the listed companies, including Google. Similarly, in its Hiring Policies and Protocols manual, Google listed Apple among the companies that had special agreements with Google and were part of the "Do Not Cold Call" list. The manual instructed Google employees not to cold call employees of the listed companies.

20. The companies, through their senior executives, policed potential breaches of the agreement. In February 2006 and March 2007, Apple complained to Google regarding recruiting efforts Google had made and, on both occasions, Google investigated the matter internally and reported its findings back to Apple.

### Apple-Adobe Agreement

21. Beginning no later than May 2005, Apple and Adobe agreed not to cold call each other's employees. Senior executives at Apple and Adobe reached an express no cold call agreement through direct and explicit communications. The executives actively managed and enforced the agreement through direct communications.

22. The Apple-Adobe agreement covered all Adobe and all Apple employees and was not limited by geography, job function, product group, or time period. Moreover, employees were not informed of and did not agree to this restriction.

23. In furtherance of this agreement, Apple placed Adobe on its internal "Do Not Call List," which instructed Apple employees not to cold call employees from the listed companies, including Adobe. Similarly, Adobe included Apple in its internal list of "Companies that are off limits," instructing recruiters not to cold call candidates from Apple.

### Apple-Pixar Agreement

24. Beginning no later than April 2007, Apple and Pixar agreed not to cold call each other's employees. Senior executives at Apple and Pixar reached an express no cold call agreement through direct and explicit communications. The executives actively managed and enforced the agreement through direct communications.

25. The Apple-Pixar agreement covered all Pixar and all Apple employees and was

not limited by geography, job function, product group, or time period. Moreover, employees were not informed of and did not agree to this restriction.

26. In furtherance of this agreement, Apple placed Pixar on its internal "Do Not Call List," which instructed Apple employees not to cold call employees from the listed companies, including Pixar. Similarly, Pixar instructed Pixar human resources personnel to adhere to the agreement and maintain a paper trail establishing that Pixar had not actively recruited job applicants from Apple.

### Google-Intel Agreement

27. Beginning no later than September 2007, Google and Intel agreed not to cold call each other's employees. Senior executives at Google and Intel reached an express no cold call agreement through direct and explicit communications. The executives actively managed and enforced the agreement through direct communications.

28. The agreement covered all Intel and all Google employees and was not limited by geography, job function, product group, or time period. Moreover, employees were not informed of and did not agree to this restriction.

29. In furtherance of this agreement, Google listed Intel in its Hiring Policies and Protocols manual among the companies that have special agreements with Google and were part of the "Do Not Cold Call" list. The manual instructed Google employees not to cold call employees of the listed companies. Similarly, Intel instructed its human resources staff about the existence of the agreement.

### Google-Intuit Agreement

30. In June 2007, Google and Intuit agreed that Google would not cold call any Intuit

employee. Senior executives at Google and Intuit reached an express no cold call agreement through direct and explicit communications. The executives actively managed and enforced the agreement through direct communications.

31. The agreement covered all Intuit employees and was not limited by geography, job function, product group, or time period. Moreover, Intuit employees were not informed of and did not agree to this restriction.

32. In furtherance of this agreement, in its Hiring Policies and Protocols manual, Google listed Intuit among the companies that had special agreements with Google and were part of the "Do Not Cold Call" list. The manual instructed Google employees not to cold call employees of the listed companies.

## VIOLATION ALLEGED

### (Violation of Section 1 of the Sherman Act)

33. The United States hereby incorporates paragraphs 1 through 32.

34. Defendants are direct competitors for employees, including specialized computer engineers and scientists, covered by the agreements at issue here. Defendants' concerted behavior both reduced their ability to compete for employees and disrupted the normal price-setting mechanisms that apply in the labor setting. These no cold call agreements are facially anticompetitive because they eliminated a significant form of competition to attract high tech employees, and, overall, substantially diminished competition to the detriment of the affected employees who were likely deprived of competitively important information and access to better job opportunities.

35. Defendants' agreements constitute unreasonable restraints of trade that are per se

unlawful under Section 1 of the Sherman Act, 15 U.S.C. § 1.

## REQUESTED RELIEF

The United States requests that the Court:

(A) adjudge and decree that Defendants' agreements not to compete constitute illegal restraints of interstate trade and commerce in violation of Section 1 of the Sherman Act;

(B) enjoin and restrain Defendants from enforcing or adhering to existing agreements that unreasonably restrict competition for employees between them;

(C) permanently enjoin and restrain each Defendant from establishing any similar agreement unreasonably restricting competition for employees except as prescribed by the Court;

(D) award the United States such other relief as the Court may deem just and proper to redress and prevent recurrence of the alleged violations and to dissipate the anticompetitive effects of the illegal agreements entered into by Adobe, Apple, Google, Intel, Intuit, and Pixar; and

(E) the United States be awarded the costs of this action.

Dated this 24th day of September 2010.

Respectfully submitted,

FOR PLAINTIFF UNITED STATES:

_____
Molly S. Boast
Acting Assistant Attorney General

_____
J. Robert Kramer II
Director of Operations

_____
James J. Tierney, Chief
Networks and Technology Section
D.C. Bar #434610

_____
Scott A. Scheele, Assistant Chief
Networks and Technology Section
D.C. Bar #429061

_____
Ryan S. Struve (D.C. Bar #495406)
Adam T. Severt
Jessica N. Butler-Arkow (D.C. Bar #430022)
H. Joseph Pinto III
Anthony D. Scicchitano
Trial Attorneys

U.S. Department of Justice
Antitrust Division
Networks and Technology Section
450 Fifth Street, N.W.
Suite 7100
Washington, DC 20530
Telephone: (202) 307-6200
Facsimile: (202) 616-8544
ryan.struve@usdoj.gov

## CERTIFICATE OF SERVICE

I, Ryan Struve, hereby certify that on September 24, 2010, I caused a copy of the Complaint to be served on Defendants Adobe Systems, Inc., Apple, Inc., Google, Inc., Intel Corporation, Intuit, Inc., and Pixar by mailing the document via email to the duly authorized legal representatives of the defendants, as follows:

FOR DEFENDANT ADOBE SYSTEMS, INC.
Craig A. Waldman, Esq.
Jones Day
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 875-5765
Fax: (415) 963-6813
Email: cwaldman@jonesday.com


FOR DEFENDANT APPLE INC.
Richard Parker, Esq.
O'Melveny & Myers LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone: (202) 383-5380
Fax: (202) 383-5414
Email: rparker@omm.com


FOR DEFENDANT GOOGLE INC.
Mark Leddy, Esq.
Cleary Gottlieb Steen & Hamilton LLP
2000 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 974-1570
Fax: (202) 974-1999
Email: mleddy@cgsh.com

FOR DEFENDANT INTEL CORPORATION
Leon B. Greenfield, Esq.
WilmerHale
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 663-6972
Fax: (202) 663-6363
Email: Leon.Greenfield@wilmerhale.com


FOR DEFENDANT INTUIT, INC.
Joe Sims, Esq.
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 879-3863
Fax: (202) 626-1700
Email: jsims@jonesday.com


FOR DEFENDANT PIXAR
Deborah A. Garza, Esq.
Covington & Burling LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 662-5146
Fax: (202) 778-5146
Email: dgarza@cov.com

_____
Ryan Struve, Esq.
Trial Attorney
Networks & Technology Section
U.S. Department of Justice
Antitrust Division
450 Fifth Street, N.W.
Suite 7100
Washington, D.C. 20530
Telephone: (202) 307-6200
Fax: (202) 616-8544
Email: ryan.struve@usdoj.gov